McQUEEN *v.* INGALLS SHIPBUILDING CORPORATION

No. 40332          January 7, 1957          91 So. 2d 740

*Donald W. Cumbest,* Pascagoula, for appellant.

*Merle F. Palmer,* Pascagoula; *Morse & Morse,* Gulf-port, for appellee.

Roberds, P. J.

McQueen, plaintiff below and appellant here, suffered personal injuries as a result of steam and hot water escaping from a boiler while he was undertaking to drain the water therefrom preparatory to replacing a defective gasket therein. By this suit he seeks to recover from Ingalls damages for such injuries. The suit is grounded upon the theory that the injuries resulted from the failure of Ingalls to perform a duty owing by it to appellant. Ingalls says it was guilty of no negligence or violation of duty contributing to such injuries. When the

testimony was all in, the learned trial judge granted to Ingalls a peremptory instruction. From that action McQueen appeals here.

On this appeal he argues only two propositions: first, that the trial court erroneously permitted Ingalls to amend its answer, as hereinafter shown, and, second, the directed verdict was wrongfully granted.

The amendment to the answer was allowed under these conditions:

■■ The declaration was filed April 14, 1955. Answer was filed May 11, 1955, admitting that Hans Construction Company, the employer of McQueen, was a bailee for hire of the boiler. On June 11, 1955, Ingalls filed the amendment to its answer alleging that Hans was a gratutitous bailee of the boiler. The case came on for trial November 30, 1955. Counsel for Ingalls orally called the court's attention to the amendment which had been on file some five and a half months. Counsel for McQueen objected on the grounds "that there has already been an amendment". He then referred to the fact the amendment "has been on file for several months". Thereupon the court allowed the amendment. On this appeal appellant says he was surprised. No such claim was made in the trial court. Indeed, counsel in his objection referred to the fact the proposed amendment had been on file several months. Amendments are liberally allowed to bring cases to trial on their merits. Section 1511, Miss. Code 1942. ■■ The trial court committed no error in allowing the amendment under the circumstances.

McQueen's claim, on its merits, is grounded in this state of facts: Ingalls had a contract with Foster-Freighton Construction Company under which the latter was to construct for Ingalls what is called a "way". Foster-Freighton Construction Company sublet that work to Hans Construction Company. Hans needed a boiler. Ingalls had one not then in use. Arrangement was made

for Hans to use the boiler temporarily. Ingalls could repossess it at will. Whether Hans was to pay anything for use of the boiler is very uncertain. The testimony on the question is vague and indefinite. The great weight of the evidence, in our view, is that nothing was to be paid. And, if as a fact the bailment was for hire, and that fact was necessary for McQueen to recover, the burden was upon McQueen to prove the fact, which was not done. However, in this opinion we will assume that the bailment of the boiler to Hans was for hire. The boiler was in good condition when delivered to Hans. McQueen was an experienced boiler operator. He was also a skilled mechanic in other phases of mechanical work. He was hired by Hans to operate the boiler. He was doing that work when he was injured. The boiler had been in the possession of Hans for about two months when the injury occurred. The boiler had two gaskets. One of them developed a leak. The gaskets always developed leaks sooner or later in the normal use of the boiler. Replacement of the gasket was not a difficult matter for one familiar with operating the boiler.

McQueen undertook to replace the leaky gasket with a new gasket. To do that it was necessary to drain the hot water and steam from the boiler. In the process of doing that McQueen put his hand into what is called the hand hole (sometimes called "man hole" in this record) of the boiler, with the purpose of removing therefrom the back plate thereof. The plate fell into the boiler permitting steam and hot water to escape through the hand hole, resulting in McQueen being rather badly burned on his arms and other parts of his body. It is evident the cause of this injury was the erroneous assumption of McQueen that the steam and hot water had been eliminated from the boiler. Too, the evidence is that the proper way to remove the plate from the hand hole was for the operator to wear gloves, and McQueen did not use gloves.

Now, in these circumstances, wherein can liability rest upon Ingalls?

■■ The general rule applying to the liability of a bailor of a chattel is set forth in 6 Am. Jur., Bailment, Sections 312 and 313, in these words: "In general it may be said that a bailor not in control of the subject of the bailment is liable to a third person negligently injured thereby only in case he himself, or someone acting for him, has been negligent in respect of some duty owed to such person or to the class to which he belongs.

■■ "The relationship of bailor and bailee is not, as such, within the doctrine of respondeat superior; at common law it seems to be very well settled, both in bailments for gratuitous use and in lettings for hire, that the bailor cannot be held responsible to a third person for injuries resulting from his bailee's negligent use of the bailed property, in the absence of any control exercised by the bailor at the time or of negligence of his own which proximately contributed to the injuries."

■■ In the case at bar the boiler was in good condition when delivered to Hans. The leaky gasket developed later and in the usual course of operating the boiler. McQueen knew the gasket leaked. He was in charge as the servant of Hans. McQueen was under the direction of Hans. Ingalls was under no duty to maintain the boiler. Indeed, McQueen was not injured by the leaking gasket. He was injured by placing his hand into the hand hole to remove the back plate therein. It is evident that the real cause of the injury was the mistaken assumption of McQueen that all of the hot water and steam were out of the boiler when he undertook to remove the hand plate from the hand hole, aggravated by the fact he did not wear gloves when trying to manipulate the plate in the hand hole. It is true a servant of Ingalls told a servant of Hans where Hans might obtain a new gasket, but the Ingalls servant expressly refused to have anything to do with replacing the defec-

tive gasket. We are unable to see any breach of duty owing by Ingalls to McQueen resulting in this unfortunate injury. The trial court was correct in directing a verdict for Ingalls.

It might be added that Hans Construction Company, as employer, and its insurance carrier, paid McQueen compensation under the Mississippi Workmen's Compensation Law for these injuries.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.